# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN ANDREW MUDLOCK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:20CV1136 |
| | ) 1:10CR115-1 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner submitted a letter (1:20CV1136, Docket Entry 1), which the Court has construed (1:20CV1136, 2/24/2021 Text Order) as a petition seeking a writ of error coram nobis under 28 U.S.C. § 1651. He was convicted in 2010, after a jury trial, of possession of a firearm while subject to a court order, in violation of 18 U.S.C. 922(g)(8) (1:10CR115-1, Docket Entries 1 and 21) and sentenced to 42 months of imprisonment and three years of supervised release (1:10CR115-1, Docket Entry 32). His appeal was unsuccessful. *United States v. Mudlock*, 483 Fed. App'x 823 (4th Cir. 2012).

In affirming Petitioner's conviction, the Fourth Circuit Court of Appeals stated that:

> During all relevant time periods, Mudlock was subject to a domestic restraining order that barred him from lawfully possessing firearms. The restraining order provided that Mudlock "received actual notice of the hearing; that [Mudlock] had an opportunity to participate in the hearing"; and that he was "restrained from committing further acts of abuse, domestic abuse, stalking or sexual assault or threats of abuse, stalking or sexual assault against" his wife or her minor children. It also stated that Mudlock had "made a general appearance . . . and ha[d] submitted himself to the jurisdiction of [the court.]" The order further announced that Mudlock "represents a credible

> threat to the physical safety of [Ms. Mudlock]." And, it required that Mudlock "terminate [his] physical possession of the firearms [in his possession] by any lawful means." The order states that, barring a continuation, it would be in effect for one year. Mudlock signed the order on August 18, 2009.

*Id.* at 826. Petitioner thereafter served his sentence and period of supervised release.

Later, in 2019, Petitioner pled guilty in a separate criminal proceeding to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to 48 months of imprisonment and three years of supervised release. (1:19CR83-1, Docket Entry 38.) His appeal was unsuccessful. *United States v. Mudlock*, 826 F. App'x 264 (4th Cir. 2020).

In 2019, Petitioner also filed a petition for a writ of error coram nobis seeking the vacatur of his 2010 conviction, which the Court found meritless and denied. (1:19cv705, Docket Entries 1, 16 and 20.) Petitioner later filed his instant petition and a supplement, in which he again tries to attack his 2010 conviction. (1:20CV1136, Docket Entries 1 and 6.) The Government filed a motion to dismiss (1:20CV1136, Docket Entry 8) and Petitioner filed a response (1:20CV1136, Docket Entry 10). This matter is now prepared for a ruling.

## **Petitioner's Ground**

Petitioner contends that his 2010 conviction should be vacated in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (1:20CV1136, Docket Entry 1 at 1.) Petitioner further argues that because the 2010 conviction—which is now allegedly infirm under *Rehaif*—is the predicate felony for his 2019 conviction, his 2019 conviction is also invalid. (*Id.*) For the following reasons, Petitioner's petition should be denied.

2

## Discussion

The power of a federal court to issue a writ of coram nobis is found in the All Writs Act, codified at 28 U.S.C. § 1651(a). *Bereano v. United States*, 706 F.3d 568, 575 (4th Cir. 2013). In *Bereano*, the Fourth Circuit Court of Appeals concluded that to reach the ultimate decision regarding coram nobis relief:

> a petitioner is obliged to satisfy four essential prerequisites. First, a more usual remedy (such as habeas corpus) must be unavailable; second, there must be a valid basis for the petitioner having not earlier attacked his convictions; third, the consequences flowing to the petitioner from his convictions must be sufficiently adverse to satisfy Article III's case or controversy requirement; and, finally, the error that is shown must be "of the most fundamental character."

*Bereano*, 706 F.3d at 579 (quoting *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012)).

Additionally, in *Rehaif*, the Supreme Court held that § 922 does not criminalize a defendant's "innocent mistake" and that a conviction under § 922(g) therefore requires "knowledge of [the] status" that renders firearm possession unlawful. *Rehaif*, 139 S. Ct. at 2197; *see also id.* at 2198 (explaining that § 922(g) does not criminalize possession of a firearm by a convicted felon who was "sentenced only to probation . . . [and] who [did] not know that the crime [was] 'punishable by imprisonment for a term exceeding one year'").

The Supreme Court also held more recently in *Greer* that to demonstrate prejudice from a *Rehaif* error, in which a defendant went to trial, that defendant must show that there is a "reasonable probability" that but for the *Rehaif* error in the jury instructions, he would have been acquitted. *Greer v. United States*, 141 S. Ct. 2090, 2097, 2100 (2021).

3

Although *Greer* articulated the threshold to show prejudice for a *Rehaif* error in a direct appeal under the plain-error standard, the framework is nonetheless instructive in the coram nobis context, where Petitioner alleges a similar *Rehaif* error. In fact, the actual prejudice standard for collateral attacks is a "significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Indeed, a post-conviction petitioner must show not just that the purported error "created a *possibility* of prejudice," or "prejudice *per se*," but rather he must show that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170.

In any event, regardless of the standard of review, Petitioner has failed to demonstrate that any *Rehaif* error impacted the outcome of his trial in any manner and his Petition should be denied for this reason alone. To find Petitioner guilty of possession of a firearm while subject to a court order, the Government had to prove the following: (1) Petitioner was subject to a court order restraining him from "harassing, stalking, or threatening an intimate partner" that "was issued after a hearing of which [he] received actual notice, and at which [he] had the opportunity to participate"; (2) Petitioner knowingly possessed a firearm; and (3) the firearm traveled in or affected interstate commerce. *See* 18 U.S.C. § 922(g)(8). Pursuant to *Rehaif*, the Government must also demonstrate that "the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif*, 139 S. Ct. at 2194. Thus, under *Rehaif*, the Government must prove that Petitioner knew about the protective order.

At trial, the Government presented remarkably strong evidence that Petitioner knew his status as a person who was subject to a court order involving domestic violence when he

4

possessed the firearms in question. Specifically, at trial, the Government presented a certified copy of the Order of Protection, *signed by Petitioner himself*, which indicated as much. (1:10CR-115-1, Docket Entry 41 at 158-165; Docket Entry 45.) This amounts to actual notice that Petitioner knew his status as someone subject to a court order. Under these circumstances, common sense dictates that Petitioner knew that he was subject to the Tennessee court order.

Moreover, Petitioner has made no credible showing that had the jury been properly instructed on the knowledge element of § 922(g)(8), it would have arrived at a different verdict. There is no evidence that, if properly instructed under *Rehaif*, the jury in Petitioner's 2010 case would have arrived at any different conclusion than it did when it convicted him in 2010. Consequently, any *Rehaif* error was ultimately non-prejudicial and thus far from fundamental.

Petitioner's arguments to the contrary are not persuasive. Petitioner references *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), *rev'd sub nom. Greer v. United States*, 141 S. Ct. 2090 (2021). (1:20CV1136, Docket Entry 1 at 1.) However, the Supreme Court issued an opinion on June 14, 2021, reversing the Fourth Circuit's decision in *Gary*. *Greer*, 141 S. Ct. at 2101. *Gary* held that a *Rehaif* "error is structural, which *per se* affects a defendant's substantial rights." *Gary*, 954 F.3d at 200. In *Greer*, however, the Supreme Court reversed *Gary* and made clear "a *Rehaif* error . . . is . . . not structural," as it "fit[s] comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" 141 S. Ct. at 2100 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)). Consequently, any assertion that a *Rehaif* error is per se reversible has no merit. Therefore, *Gary* cannot serve as a basis for Petitioner's argument.

5

*Greer* also undercuts Petitioner's reliance on *United States v. Medley*, 972 F.3d 399 (4th Cir. 2020) as well. (1:20CV1136, Docket Entry 1 at 1.) In *Medley,* the Fourth Circuit held that, under plain error review, the failure of an indictment to provide proper notice combined with an improper jury instruction that omits an element of a crime are substantial errors that ought to be corrected. 972 F.3d at 405-406. However, in *Greer*, the Supreme Court held that there was no plain error in the failure to instruct the jury on the post-*Rehaif* elements. 141 S. Ct. 2090, 2098-99. The Court held that courts could look to documents outside the trial record, such as the presentence report, to determine if the defendant plausibly made an argument that he did not know his prior felon status. *Id.* In *Greer*, where the defendant had previously stipulated to his prior conviction at trial and had served time for multiple felonies, the Court concluded that no error was shown. *Id.* Consequently, in light of *Greer*, Petitioner cannot rely on *Medley* to contend that all *Rehaif* errors are per se reversible. *See also United States v. Green*, 973 F.3d 208, 211 (4th Cir. 2020) (employing standard set forth in *Medley*), *vacated by*, 141 S. Ct. 2785 (2021) (remanding in light of *Greer*). For these reasons, Petitioner's ground warrants no relief.

Last, Petitioner's contention (1:20CV1136, Docket Entry 1 at 2) that he did not know he was prohibited from possessing a gun under federal law in 2010, also warrants no relief. *Rehaif* does not stand for the proposition that a person needs to know the law.[1] *See United States*

---

[1] In his instant Petition, Petitioner states "The true facts and details about the TN court order that I was subject to in 2010 can be found in the documents that were filed in a petition for a writ of error that I filed in 2019. Case 1:19CV705." (1:20CV1136, Docket Entry 1 at 2.) Petitioner further asserts that these documents were illegally withheld from him by the Government "in violation of *Brady v. Maryland*." (1:20CV1136, Docket Entry 6 at 4.) Petitioner's unsuccessful effort to secure coram

6

*v. Moody*, 2 F.4th 180, 197-98 & n.6 (4th Cir. 2021) (holding § 922(g) does not require Government to prove defendant knew he was prohibited from possessing firearms) (collecting cases).

**IT IS THEREFORE RECOMMENDED** that the Government's motion to dismiss (1:20CV1136, Docket Entry 8) should be **GRANTED**, that Petitioner's Petitioner for a writ of coram nobis (1:20CV1136, Docket Entry 1) be **DENIED,** and that this action be dismissed.

_____
Joe L. Webster
United States Magistrate Judge

November 17, 2021
Durham, North Carolina

---

nobis relief in 2019—a prior effort to set aside his 2010 conviction—does not strengthen his Petition here. As the Court explained in denying Petitioner's 2019 petition for a writ of coram nobis, "Nothing [Petitioner] has included with his filings indicates that the Tennessee order was invalid or issued without notice and a hearing. Without more, his statements are mere conclusory allegations that cannot support the relief he seeks." (1:19CV705, Docket Entry 16 at 4.) The documents to which Petitioner points do not demonstrate his actual innocence of the 2010 conviction. Moreover, Petitioner's reference to a purported *Brady* violation is vague, conclusory, unsupported, could have been raised years ago, and warrants no form of relief. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cit.1992) *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cit. 1999). Petitioner's 2019 petition for coram nobis relief was fatally flawed, as is his current Petition for coram nobis relief.